IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HOWARD TIEMAN, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 4:25-00246-CV-DGK |
| AMERICAN RISK SERVICES, LLC, et al., | ) |
| Defendants. | ) |

**ORDER DENYING MOTION TO REMAND, GRANTING MOTION TO DISMISS**

This case arises out of allegations that Defendants fraudulently induced Plaintiffs to enter into an agreement to market Plaintiffs' insurance product by misrepresenting their intent and ability to perform their obligations. Defendants deny the allegations.

Plaintiffs filed this case in the Circuit Court of Jackson County, Missouri. Defendants removed to federal court, alleging Plaintiffs fraudulently joined Defendant Arch Insurance Company ("Arch Insurance") to preclude removal.

Now before the Court are Defendant Arch Insurance Company's 12(b)(6) motion to dismiss all claims against it, ECF No. 10, and Plaintiffs' Motion to Remand, ECF No. 15. Because the record demonstrates Plaintiffs have no colorable claims against Arch Insurance, the motion to remand is DENIED and the motion to dismiss is GRANTED. All claims against Arch Insurance are DISMISSED WITHOUT PREJUDICE.

**Standard of Review**

An action may be removed by the defendant to federal district court if the case falls within the district court's original jurisdiction. 28 U.S.C. § 1441(a). If the case is not within the court's original jurisdiction, the court must remand the case to the state court from which it was removed.

28 U.S.C. § 1447(c). To meet the requirements for diversity jurisdiction, the parties must be citizens of different states and the amount in dispute must exceed $75,000. 28 U.S.C. § 1332(a). Complete diversity between the parties is required; the presence of a single plaintiff who is from the same state as a single defendant destroys diversity and extinguishes a federal court's jurisdiction to hear the matter. *Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). The burden of establishing federal jurisdiction is on the party seeking removal, *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993), and all doubts are resolved in favor of remand, *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).

Fraudulent joinder is an exception to the complete diversity rule. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). "Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a nondiverse defendant solely to prevent removal." *Id*. The fraudulent joinder exception prevents the plaintiff from blocking removal by adding nondiverse defendants. *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006). For purposes of determining diversity, the court ignores the citizenship of any fraudulently joined defendant. *See id.*

Joinder is fraudulent when there is no reasonable basis in fact or law for the plaintiff's claims against that defendant. *In re Prempro*, 591 F.3d at 620. This requires the removing defendant to do more than merely prove that the claims should be dismissed pursuant to a Rule 12(b)(6) motion. *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011). If a claim is fraudulently joined, then by definition it cannot survive a Rule 12(b)(6) motion. *Id*.

2

## Factual Background

For purposes of resolving the pending motions, the Court adopts the facts alleged in the Complaint as well as those in documents embraced by the Complaint.[1] These facts are as follows.

Plaintiffs are the developers and/or owners of a novel and lucrative insurance product, namely a "loan-to-value risk management program for automobile loans." Compl. ¶¶ 18, 23, ECF No. 1-1. Plaintiffs refer to this product as the LEP/DGP Program.[2] To commercialize this product, Plaintiffs sought a partner to assist with sales solicitation, administration, and marketing, as well as an insurance underwriter to underwrite and issue policies. During this time, Plaintiffs began consulting with Glen Ballew ("Ballew"), a recently retired Executive Vice President of Arch Insurance, to bring the LEP/DGP Program to market. Through this process, Plaintiffs were introduced to defendant American Risk Services, LLC ("ARS"), which had a relationship with defendant Arch Insurance through other insurance programs.

A meeting was held on August 27, 2019, which involved Plaintiffs, non-party Ballew, and defendants Robert Simpson III ("Simpson") and Scott W. Satterthwaite ("Satterthwaite"), Simpson and Satterthwaite, as representatives from ARS, made numerous false representations. Relevant to the pending motions, these representations include that ARS had formed a partnership with Arch Insurance to underwrite other programs; that ARS was able to commit Arch Insurance

---

[1] Plaintiffs', and to a lesser extent, Defendants', attempts to bolster the record with new facts by attaching various affidavits to their briefs. These attempts are unavailing. Neither the Eighth Circuit nor the Supreme Court have approved of using documents outside the pleadings to evaluate whether a plaintiff can establish a claim against a diversity-destroying defendant. This Court follows the trend of district courts in this circuit which have declined to consider such materials in determining whether there has been fraudulent joinder. *See Dillard v. Silvercote, LLC*, No. 4:17-CV-2314 CAS, 2018 WL 2364281, at *4 (E.D. Mo. May 24, 2018) (collecting cases).

[2] The acronym is derived from the program's former name, the Partial Recourse Protection Program, which was later known as Lenders Equity Protection ("LEP") when it was made available to retail automotive lenders and known as Dealer Guarantee Protection ("DGP") when made available to automobile dealers.

to the LEP/DGP Program as an issuer and underwriter of the policies contemplated by the LEP/DGP Program; and that ARS had secured Arch Insurance's agreement to go forward with the LEP/DGP Program. Plaintiffs relied on these representations by abandoning efforts to find alternative forms of assistance to bring the LEP/DGP Program to market and entering into an agreement ("the Agreement") and a separate letter agreement ("the Letter Agreement") with ARS on March 30, 2020. The Agreement obligated ARS to solicit automobile dealers or retail automobile lenders to purchase insurance products through the LEP/DGP Program. The Letter Agreement, on the other hand, noted that while an underwriting profit was "no way certain," "[i]n the event of profits from the underwriting of LEP/DGP, ARS agrees to pay [Plaintiffs] ten percent of that profit." Compl. Ex. C at 1, ECF No. 1-1.

ARS's representatives made additional representations and admissions after the agreements were signed, essentially re-affirming their commitment to the endeavor. But on August 9, 2021, ARS and Satterthwaite admitted that ARS did not have the distribution to take the Program to dealers or to automobile lenders.

Plaintiffs allege that since executing the Agreement and Letter Agreement, ARS, Simpson, Satterthwaite, and Arch Insurance have failed and refused to perform their contractual and other obligations. Plaintiffs contend Defendants have breached the agreements, made fraudulent representations and/or omissions, and violated fiduciary duties allegedly owed to Plaintiffs.

Against Arch Insurance, the Complaint asserts claims for breach-of-contract (Count II), breach-of-contract as a third-party beneficiary (Count V), breach of implied contract (Count VI), breach of fiduciary duty (Counts VII and X), conspiracy to commit fraud (Count VIII), and continuing fraud post-breach of contract (Count IX). The Complaint alleges ARS and Arch

Insurance entered into an underwriting and profit-sharing agreement for Arch Insurance's underwriting policies in the LEP/DGP Program.

The only agreement related to the LEP/DGP program between ARS and Arch Insurance (or any of Arch Insurance's subsidiaries or affiliates) is the Producer Agreement. It states that ARS would be paid on a commission on a per policy or per account basis. Producer Agreement at 3, ECF No. 1-5. It does not provide for contingent commissions or other profit sharing, nor does it mention any third parties who would be receiving payment. *Id*. at 8.

Arch Insurance is a Missouri citizen and the only non-diverse Defendant. On April 7, 2025, Defendants removed this case to federal court by invoking the Court's diversity jurisdiction, arguing diversity jurisdiction exists because Arch Insurance was fraudulently joined, so the Court should disregard its citizenship.

## Discussion

### I. Plaintiffs' breach of contract claim (Count II) is not colorable against Arch Insurance.

Count II alleges ARS and Arch Insurance breached the Letter Agreement. The Letter Agreement is a single page document signed by ARS and members of the LEP Group. Arch Insurance is not a signatory to this agreement; indeed, it is not mentioned in the Letter Agreement at all.

In the Letter Agreement, ARS agreed to do four things: (1) "to pay the LEP Group ten percent (10%) of [any underwriting] profit"; (2) "to establish an insurance agency or reinsurance company which will enable the LEP Group to receive such profits"; (3) "to facilitate the LEP Group's compliance with [the insurance agency] covenant"; and (4) "to provide such information and data to the LEP Group as necessary to monitor such profits, if any." Letter Agreement at 1.

The Letter Agreement acknowledges that "LEP/DGP as insurance products will require insurance underwriting," but it does not identify who will provide that underwriting, nor does it obligate any party to provide such underwriting. *Id.* It does provide that part of any underwriting profit would flow from ARS to the LEP Group.

With respect to Arch Insurance, the Complaint alleges, "Upon information and belief, Arch [Insurance], having a significant business relationship with ARS and depending on ARS for a significant portion of business, conspired with ARS in its fraudulent and negligent representations, as further described herein, so as to cause the LEP/DGP Program to fail." Compl. ¶ 48.

Under Missouri law, to succeed in a breach of contract claim, a plaintiff must prove: (1) a contract existed between plaintiff and defendant; (2) plaintiff had certain rights and defendant had certain obligations or duties under the contract; (3) defendant breached the contract; and (d) because of that breach, plaintiff suffered damages. *Taryen Dev., Inc. v. Phillips 66 Co.*, 31 S.W.3d 95, 104 (Mo. Ct. App. 2000).

Arch Insurance argues Plaintiffs have not plausibly alleged the first three elements against it. It is correct. With respect to the first element, there is no dispute that Arch Insurance did not sign the Letter Agreement, nor is there any other written agreement between any of the Plaintiffs and Arch Insurance. This is problematic for Plaintiffs because a "contract generally binds no one but the parties thereto, and it cannot impose any contractual obligation or liability on one not a party to it." *Cont'l Cas. Co. v. Campbell Design*, 914 S.W.2d 43, 44 (Mo. Ct. App. 1996).

In response, Plaintiffs throw a variety of legal arguments at the proverbial wall to attempt to make a non-frivolous argument stick that Arch Insurance was a party to the contract. Plaintiffs alternately contend Arch Insurance became a party to the Letter Agreement: (1) via its conduct

6

which manifested assent; or (2) by accepting Plaintiffs' performance under the Letter Agreement; or (3) by partially performing the contract.

The caselaw cited by Plaintiffs in support is not analogous. They are so inapposite that citation to these cases only demonstrates Plaintiffs' desperation to maintain Arch Insurance as a defendant despite having no colorable claims against it. For example, Plaintiffs cite *Hahn v. Forest Hills Construction Company* for support that Arch Insurance is a party because it accepted Plaintiffs' performance under it. But the facts in *Hahn* are wildly different than those here. In *Hahn*, the plaintiff offered in writing to fence 9,400 feet of ditches in a subdivision for a certain price per foot. 334 S.W.2d 383, 384 (Mo. Ct. App. 1960). The defendant never signed the contract, and after the plaintiff constructed 1,500 feet of the fence, the defendant refused to permit him to continue with the construction. Plaintiff then sued for breach of contract. *Id*. Unlike in this case, the identity of the two parties to the contract was clear—the plaintiff (who wrote the bid and delivered it to the defendant) and the defendant (who paid the plaintiff for the 1,500 feet of fence before finding another supplier). *Id*. The appellate court upheld the verdict in plaintiff's favor, noting whether the contract was signed or not, defendant agreed to the bid when it accepted plaintiffs' performance, i.e., by paying for the 1,500 feet of fence before finding an alternative supplier. *Id*. at 385. The facts of this case are completely different. Arch Insurance is not mentioned in the contract, never solicited a bit, and never paid anything to Plaintiffs.

Plaintiffs' claims that under the Letter Agreement Arch Insurance was obligated to do something, such as provide underwriting, and breached a duty by not providing such services, are similarly meritless, and so the second and third elements of a breach of contract claim are also not met. Plaintiffs again fail to identify any analogous caselaw suggesting a non-signatory to a

7

contract such as Arch Insurance is obligated under that contract, or that Arch Insurance somehow breached the contract.

In summary, there is no reasonable basis in fact or law for Plaintiffs' breach of contract claim against Arch Insurance in Count II.

**II.     Plaintiffs' breach of contract claim (Count V) against Arch Insurance on the theory that Plaintiffs were a third-party beneficiary is not colorable.**

Count V of the Complaint alleges breach of contract against Arch Insurance under a theory that Plaintiffs were a third-party beneficiary to the underwriting and profit-sharing agreement (the Producer Agreement), made between ARS and Arch Insurance. In relevant part, the Complaint alleges

> 85. Upon information and belief, ARS and Arch entered into *an underwriting and profit-sharing agreement* as evidenced by Arch underwriting policies in the LEP/DGP Program.
>
> 86. The LEP/DGP Group was the intended, or in the alternative, incidental, third-party beneficiary of the agreement between ARS and Arch whereby Plaintiffs would profit from the underwriting of LEP/DGP Program policies.
>
> 87. Arch breached its agreement with ARS, of which Plaintiffs were the third-party beneficiaries, in the following ways:
>
>> a. By ceasing to underwrite or promote the LEP/DGP Program as it had agreed to with ARS and the LEP/DGP Group;
>>
>> b. By failing to share underwriting profits with the LEP/DGP Group as it had agreed to do.

¶¶ 85–87 (emphasis added).

A third-party beneficiary is one who is not privy to a contract or its consideration but one

to whom the law gives the right to maintain a cause of action for breach of contract. *Laclede Inv.t Corp. v. Kaiser*, 596 S.W.2d 36, 41 (Mo. Ct. App. 1980). Only those third parties for whose primary benefit the contracting parties intended to make the contract may maintain an action. *Id*. This is not an easy showing to make in a case such as this one because,

> [t]he contract terms must clearly express that the contracting parties intended the third party to be the beneficiary of performance of the contract and have the right to maintain an action on the contract. Though the third-party beneficiary need not be named in the contract, *the terms of the contract must express directly and clearly, an intent to benefit the specific party or an identifiable class of which the party asserting rights as a third-party beneficiary is a member*. Inasmuch as people usually contract and stipulate for themselves and not for third persons, a strong presumption arises that such was their intention, and the implication to overcome that presumption must be so strong as to amount to an express declaration. In other words, the court may not speculate from the language in the contract that the contracting parties wanted to make the plaintiff a third-party beneficiary.

*Id*. at 42 (emphasis added) (internal citations omitted).

In this case, since there is no language in the Producer Agreement that expresses directly and clearly an intent to benefit Plaintiffs, the presumption against finding Plaintiffs to be third-party beneficiaries to the Producer Agreement is not overcome. Plaintiffs' protestation that it is premature to make such a finding because they have not yet conducted discovery is unavailing. Plaintiffs did not ask to engage in jurisdictional discovery before briefing this issue, and after reviewing the record, the Court has no reason to believe that allowing Plaintiffs to engage in such discovery would serve any valid purpose.

The Court holds Count V is not colorable against Arch Insurance.

9

### III. Plaintiffs' alternate Count V claim for implied breach of contract claim (Count VI) is not colorable against Arch Insurance.

Count VI is captioned as an "alternative" breach of contract claim to Count V. Count VI alleges an implied contract exists between Plaintiffs and ARS/Arch Insurance which Arch and ARS breached.

To prevent unjust enrichment, Missouri law may imply a contract where no express contract exists. *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. App. 2014). The elements of an unjust enrichment claim include a benefit given, appreciated, and unjustly retained. *Joseph F. Wagner, Jr. Revocable Tr. U/A v. Thomson*, 586 S.W.3d 273, 280 (Mo. Ct. App. 2019). In this case, the alleged benefit given is Plaintiffs' granting ARS and Arch Insurance the ability to sell and underwrite, and thereby profit, from the LEP/DGP Program. The first element cannot be satisfied here because the obligations to Plaintiffs regarding the promotion of, underwriting of, and profit-sharing related to the Program are specified in the Agreement and Letter Agreement, and only ARS is obligated or receives any benefit under either agreement. Plaintiffs conferred nothing to Arch Insurance under either agreement, and Arch Insurance was due nothing under either agreement. Hence, Plaintiffs' claim of an implied contract between themselves and Arch Insurance and Plaintiffs is without a reasonable basis in fact or law.

### III. Plaintiffs' breach of fiduciary duty claims (Counts VII and X) are not colorable with respect to Arch Insurance.

Counts VII and X allege a breach of fiduciary duty against Arch Insurance premised on ARS and Arch Insurance having "an agreement set forth in the Letter Agreement to share underwriting profits with Plaintiffs thereby making ARS, Arch, and the LEP/DGP Group

10

partners," so Arch Insurance had a fiduciary duty to Plaintiffs. As discussed above, however, Arch Insurance was not a party to the Letter Agreement, nor did it owe Plaintiffs any contract-based duty under some other legal theory. Because the premise for these claims against Arch Insurance is not colorable, the claims are not colorable against Arch Insurance.

IV. **Plaintiffs' conspiracy to commit fraud claim (Count VIII) is not colorable with respect to Arch Insurance.**

Count VIII alleges that defendants Arch Insurance, ARS, Simpson, and Satterthwaite reached an agreement or understanding to defraud Plaintiffs by inducing them to enter the Agreement and the Letter Agreement. Plaintiffs allege "upon information and belief" that Arch Insurance agreed to further the conspiracy by underwriting and issuing the LEP/DGP Program policy, communicating with the other co-conspirators about these activities, and agreeing to the underwriting profit split set forth in the Letter Agreement. Compl. ¶ 106. Plaintiffs further allege that on August 27, 2019, Simpson and Satterthwaite had a meeting with Plaintiffs where they made certain representations "on behalf of themselves individually, on behalf of ARS, and on behalf of Arch." Compl. ¶ 35.

Arch Insurance argues this claim is not colorable against it for two independent reasons. First, the allegations lack the requisite particularity with respect to it. Second, Plaintiffs have alleged no facts indicating Simpson or Satterthwaite ever had authority to act on behalf of Arch at any time, much less on August 27, 2019.

To state a claim for conspiracy under Missouri law, a plaintiff must establish that two or more persons with an unlawful objective, after a meeting of the minds, committed at least one act in furtherance of the conspiracy, with a resulting injury. *Higgins v. Ferrari*, 474 S.W.3d 630, 642

(Mo. App. W.D. 2015). "Conspiracy is not itself actionable in the absence of an underlying wrongful act or tort." *Williams v. Mercantile Bank of St. Louis NA*, 845 S.W.2d 78, 85 (Mo. Ct. App. 1993). The plaintiff must also plead the underlying cause of action; in this case, fraudulent misrepresentation. *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 587 (Mo. Ct. App. 2008). Although Plaintiffs do not dispute Arch Insurance's suggestion that they must meet a heightened pleading standard,[3] the Court does not agree. The relevant question here is not whether Plaintiffs have met the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b)'s (or its state court counterpart, Missouri Supreme Court Rule 55.15), which is applicable on a motion to dismiss. The question here is whether there has been fraudulent joinder, and the answer to that question depends on whether Plaintiffs have alleged a colorable claim.

Assuming Plaintiffs have alleged the underlying tort of the conspiracy (fraudulent misrepresentation),[4] the Court finds Plaintiffs have not pled a colorable conspiracy. The conspiracy allegations against Arch Insurance are a collection of conclusions and speculation premised by the words "upon information and belief." Moreover, some of these conclusions and speculation are refuted by the existing record. For example, the assertion that Simpson was an agent of ARS and Arch Insurance is contradicted by the Producer Agreement, which was signed

---

[3] A case alleging fraud filed in state court which is then removed to federal court must meet the heightened pleading standard in Federal Rule of Civil Procedure 9(b) to survive a motion to dismiss. *See*, *e.g.*, *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013).

[4] Under Missouri law, the elements of fraudulent misrepresentation are: (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. 2010). Although Arch Insurance has not advanced this argument, it is not clear to the Court Plaintiffs have pled each of these elements.

by Simpson on behalf of ARS, and states ARS "is not an agent, a representative or an employee of" Arch Insurance.[5]  Producer Agreement at 1.  Because Plaintiffs' allegations with respect to Arch Insurance on Count VIII are so lacking in facts and non-conclusory, non-speculative allegations, the Court holds they do not establish a colorable claim.

V.      **Plaintiffs' "continuing fraud post-breach of contract" claim (Count IX) is not colorable with respect to Arch Insurance.**

Count IX alleges that "[f]ollowing ARS' breach of its contract, Defendants continued to make false and fraudulent statements regarding their intent and ability to perform their contractual allegations" so that Plaintiffs would forestall legal action against ARS and its principals and not seek other avenues to develop the LEP/DGP Program.  Compl. ¶ 62.  Although this count is captioned as being brought against "all Defendants," Arch Insurance is not mentioned specifically, and the allegations do not appear to have anything to do with Arch Insurance.  The only specific false statement is one allegedly made by "ARS and Simpson" on or about February 9, 2021.  Otherwise, Plaintiffs simply make note of "Defendants' representations" without attributing them to any particular defendant.  *Id*. ¶¶ 114–15.  This is insufficient to allege a colorable claim with respect to Arch Insurance.

Because the Complaint fails to allege any colorable claims against Arch Insurance, Plaintiff's motion to remand is DENIED and Arch Insurance's motion to dismiss is GRANTED. All claims against Arch Insurance are DISMISSED WITHOUT PREJUDICE.

---

[5] Although the Court is not considering this argument because it rests on facts not alleged in the Complaint, Plaintiffs' assertion that Simpson and Satterthwaite were acting as agents of ARS and Arch Insurance at the alleged meeting on August 27, 2019, are even less likely to be true if one accepts Arch Insurance's factual allegation that at this time both Simpson and Satterthwaite were employed solely by ARS.

13

**IT IS SO ORDERED.**

Date:   August 22, 2025                              /s/ Greg Kays
                                                     GREG KAYS, JUDGE
                                                     UNITED STATES DISTRICT COURT